**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **JACQUELINE CORTEZ** | § | |
| **BURLINGAME, INDIVIDUALLY** | § | |
| **AND AS REPRESENTATIVE OF** | § | |
| **ESTATE OF JORGE "GEORGE"** | § | |
| **LUIS, CORTEZ, JENNY ESPINOZA,** | § | |
| **AMELIA, CORTEZ, AND HEIRS OF** | § | |
| **JORGE "GEORGE" CORTEZ,** | § | |
| **ESTATE OF** | § | |
| **JORGE  CORTEZ** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| **GALVESTON COUNTY,** | § | |
| **GALVESTON COUNTY SHERIFF-** | § | |
| **HENRY TROCHESSET,** *in his* | § | |
| *individual capacit*y, **MARY JOHNSON,** | § | |
| *in her individual capacit*y, **BOON-** | § | |
| **CHAPMAN BENEFIT** | § | |
| **ADMINISTRATORS INC., SOLUTA,** | § | |
| **INC,  SOLUTA HEALTH, INC,** | § | |
| **KATHY WHITE, AKA, KATHY JEAN** | § | |
| **JORDAN, in** *her individual capacity,* | § | **CIVIL CASE NO._____** |
| **GARRY KILLYON,** *in his individual* | § | |
| *capacity*, **ALEXIS ENSLEY,** | § | |
| *in her individual capacity*, **KIMBERLY** | § | |
| **BOYKINS,** *in her individual capacity,* | § | **JURY DEMANDED** |
| *JOHN DOE* **JAILERS  1-20** *in their* | § | |
| *individual capacities,* **JOHN DOE** | § | |
| **POLICYMAKERS 1-25,** *in their* | § | |
| *individual capacities,* **and DOE** | § | |
| **MEDICAL PROVIDERS 1-25,** *in their* | § | |
| *individual capacities,* | § | |
| **Defendants,** | § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE GEORGE HANKS, JR.:

NOW COMES Estate of Jorge "George" Luis Cortez, Jenny Espinoza, Amelia Cortez, and Jacqueline Cortez Burlingame, individually and as Representative of Estate of Jorge "George" Luis Cortez as Wrongful Death Beneficiary, as heirs, and survivors of Jorge "George" Luis Cortez, Plaintiffs herein, complaining of Galveston County and Galveston County Sheriff, Henry Trochesset, Mary Johnson, (" County Defendants" Collectively herein) Boon-Chapman Benefit Administrators Inc.("Boon Chapman" herein), Soluta, Inc, Soluta Health, Inc ("Soluta" herein), Kathy White, Aka, Kathy Jean Jordan ("Kathy White" herein), Gary Beach, Garry Killyon, Alexis Ensley, and Kimberly Boykins, John Doe Policymakers 1-25,  John Doe deputies jailers 1-25 and Doe medical providers 1-25, acting under in their individual capacities and for cause of action would respectfully shows as follows:

## INTRODUCTION

1. Jorge "George" Cortez, 56, was in the custody Galveston County's Jail awaiting placement in a treatment facility.

2. Unbeknownst to him he was suffering from mesothelioma-a rare type of lung cancer.

3. While in jail Mr. Cortez complained of dizziness to the guards and the medical department several times and the need to be on the lower bunk level.

4. Mr. Cortez's dizziness was so obvious that other inmates also told guards Mr. Cortez needed to be on a lower bunk.

5. When Mr. Cortez tried to lay on the lower bunk, at the insistence of other inmates, guards ordered him to move and required him to return to his top bunk bed assignment until he received the order from the private healthcare provider contractor-Defendant Soluta-to provide medical care at the jail.

6. Despite his obvious-even-to-jail inmates poor condition Soluta denied the request and Mr. Cortez fell off the top bunk puncturing his lung. This caused Mr. Cortez, with punctured lung and mesothelioma, to have great trouble breathing along with the dizziness and he returned to Soluta. Soluta only gave him over-the-counter Ibuprofen pills which did nothing.

7. Mr. Cortez then got so bad several inmates contacted their own family members and Mr. Cortez's family members in the "free world" to do something to help Mr. Cortez. Mr. Cortez was too weak to eat.

8. He went back to Soluta Health and they prescribed a violent cell.

9. Eventually Mr. Cortez became so weak could not get up from the bed and a guard took notice carried him to Soluta where they finally acknowledged his serious medical need. He was then put in an ambulance.

10. Mr. Cortez died 24 days later, on June 23, 2017.

11. On June 27, 2013, Arthur Lee Linear, an inmate at the Galveston County jail died because Soluta failed to provide obvious medical care.

12. On March 15, 2015, Jesse Clayton Jacobs an inmate at the Galveston County jail died because Soluta failed to provide obvious medical care.

13. On November 15, 2017, Jerry Louise Biggers-Hill an inmate at the Galveston County jail died because Soluta failed to provide obvious medical care.

14. On December 22, 2017, Barry Edwards Phillips an inmate at the Galveston County jail died because Soluta failed to provide obvious medical care.

15. On February 28, 2016, Denise Pope's unborn child while Mrs. Pope was an inmate at the Galveston County jail died because Soluta failed to provide obvious medical care.

16. This is a wrongful death action brought by the Estate of Jorge Cortez and Plaintiffs, who are the daughters, and heirs of Mr. Jorge "George" Cortez. Pursuant to 42 U.S. C. §1983, and § 1985, they are seeking recovery and redress for violations of the constitutionally-protected civil rights of Mr. Cortez, decedent.

17. Specifically, Plaintiffs, Mrs. Amelia Cortez, Jenny Espinoza and Mrs. Cortez Burlingame, as representative of the Estate of Mr. Cortez, allege that Galveston County and Galveston County Sheriff, Henry Trochesset, Mary Johnson, Boon-Chapman Benefit Administrators Inc., Soluta, Inc., Soluta Health, Inc., Kathy White, Aka, Kathy Jean Jordan, Gary Beach, Garry Killyon, Alexis Ensley, and Kimberly Boykins, John Doe Policymakers 1-25, John Doe deputies jailers 1-25 and Doe medical providers 1-25, violated Mr. Cortez's civil rights pursuant to the

Eighth Amendment of the United States Constitution to be free from cruel and unusual punishment, to receive proper medical care, and to receive adequate medical care, equal protection, and due process, while incarcerated and under the custody and control of Galveston County, at the Galveston County Jail under the supervision and control of Galveston County, the Galveston County Sheriff, Galveston County John Doe Jailers 1-20 and Galveston County Jail's Contracted Medical Providers.

18. Plaintiffs bring this action seeking fair compensation and, in the hope, that they can prevent other inmates at any Texas Jail but namely the Galveston County Jail from suffering such preventable injuries and death.

## JURISDICTION AND VENUE

19. This court has jurisdiction over Plaintiffs' federal claims which arises under the Civil Rights Act of 1871 pursuant to 28 U.S.C. §1331, 42 U.S.C. 1983, 42 U.S.C. 1988, and 28 U.S. C., §1343, and supplemental jurisdiction over the state law claims.

## PARTIES

20. Plaintiff, Jacqueline Cortez Burlingame as representative of the Estate of Mr. Jorge "George" Cortez brings this suit individually and for the benefit of her next of kin and heirs of the Estate of Jorge Cortez. Jacqueline Cortez Burlingame and Jenny Espinoza are the daughters of Mr. Cortez. The Mrs. Burlingame and Mrs.

Espinoza are residents of Cameron County, Texas, and Harris County Texas,
respectively. Mr. Cortez was a resident of Cameron County, in Los Fresnos, TX.
Mr. Cortez however, died in Galveston County. Mrs. Burlingame seeks to be
appointed the administrator of the Estate of her father, Mr. Cortez. She brings this
action both in her individual and fiduciary capacities. Plaintiff, Amelia Cortez,
brings this survivor's action and wrongful-death action as the mother of Mr.
Cortez, decedent. Plaintiff is a resident of Cameron County, Texas Plaintiff, Jenny
Espinoza, brings this survivors action and wrongful-death action as the daughter of
Mr. Cortez, decedent. Plaintiff is a resident of Harris County, Texas

**Defendant, Sheriff Henry Trochesset**

21. Defendant, Sheriff Henry Trochesset is and was at all times relevant to this action
the duly elected Sheriff of Galveston County Texas. Defendant is a "person" under
42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He
is sued in his individual capacity. He was a county policy maker with respect to
policies and procedures at the Galveston County Jail "Jail', along with Mary
Johnson, and the private medical contractors. He encouraged the policy of placing
inmates in violent cells that need medical attention, instead of transporting an
inmate to the hospital to save cost. He discreetly sanctioned, approved, and
knowingly consented to the unconstitutional conduct of his subordinates.
Trochesset had direct involvement in the decisions with reference to Plaintiffs'
housing, and medical care.  He can be serve t wherever he may be found.

**Defendant Galveston County**

22. Defendant Galveston County "County" is a unit of local government organized
    under the laws of the State of Texas. Defendant is a "person" under 42 U.S.C. §
    1983 and at all times relevant to this case acted under color of law. Galveston
    County  may be served at the Galveston County Judge or wherever he may be
    found.

**Defendant, Chief Mary Johnson**

23. Defendant, Chief Mary Johnson is and was at all times relevant to this action the
    duly appointed Chief of Corrections at the Galveston County Sheriff's Office.
    Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this
    case acted under color of law. She is sued in her individual capacity.  Mary
    Johnson was a county policy-maker with respect to policies and procedures at the
    Galveston County Jail "Jail", along with Sheriff Trochesset, and the private
    medical contractors encouraged the policy of placing inmates in violent cells that
    need medical attention, instead of transporting inmates to the hospital to save cost.
    She discreetly sanctioned, approved, and knowingly consented to the
    unconstitutional conduct of the lower level employees. Chief Mary Johnson had
    direct involvement in the decisions with regard to Plaintiffs' housing, and medical
    care. She may be served wherever she may be found.

**Defendant, Boon-Chapman Benefit Administrators Inc.**

24. "Boon-Chapman" is a corporation and was at all times relevant to this action the medical provider under the Memorandum of Understandings (MOU) contract with Galveston County. It was responsible for providing medical, psychiatric, dental and pharmaceutical services at the Galveston County Jail. Boon-Chapman Benefit Administrators, Inc. is a "person" under 42 U.S.C.§1983 and at all times relevant to this case acted under color of law. It is the policymaker for medical care to the inmates in the Galveston County Jail. It may be served wherever it may be found.

**Defendant, Soulta Health, Inc.**

25. "Soluta Health" is a corporation and was at all times relevant to this action the medical provider operating the Memorandum of Understandings (MOU) under Boon-Chapman's contract with Galveston County. It was responsible for providing medical, psychiatric, dental and pharmaceutical services at the Galveston County Jail. Soluta Health is a "person" under 42 U.S.C.§1983 and at all times relevant to this case acted under color of law. It is the policymaker for medical care to the inmates in the Galveston County Jail. It may be served wherever it may be found.

**Defendant, Dr. Gary Beach**

26. Defendant, Dr. Gary Beach is and was at all times relevant to this action the Director of Boon Chapman for Galveston County's Jail. Defendant is a "person" under 42 U.S.C.§1983 and at all times relevant to this case acted under color of law. He is sued in his individual and in his official capacity. He was a policymaker

for the County with respect to jail medical policies and procedures. Although Dr. Beach did not directly participate in the misconduct, he failed to discourage the summoning of emergency services. Dr. Beach discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct of the lower level employees at Boon-Chapman's Soluta Health. He may be served wherever he may be found.

**Defendant, Nurse Kathy White,**

27. Defendant, Nurse Kathy White, R.N. is and was at all times relevant to this action the Policymaker for Galveston County's jail medical department as administrator and nurse for Boon-Chapman and Soluta Health, assigned to the Galveston County Jail serving as the medical department administrator, and a licensed registered nurse at Galveston County's Jail medical department contracted through Boon-Chapman. White is a "person" under 42 U.S.C.§1983 and at all times relevant to this case acted under color of law. She is sued in her individual capacity. She may be served wherever she may be found.

28. White directly participated in the misconduct, in addition, she discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct of the lower level employees at Soluta Health to refuse inmates in need of emergency medical care, including Mr. Cortez by refusing to approve the additional medical care, and the request to be transported to the hospital to save cost and earn bonuses.

**Defendant, Dr. Garry Killyon, M.D.**

29. Defendant, Dr. Garry Killyon, M.D. is and was at all times relevant to this action the Physician of the Galveston County Jail. He is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual capacity. He is a Policymaker with respect to jail medical policies and procedures. Dr. Gary Killyon failed to summon emergency services, for Mr. Cortez. He discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct of the subordinates at Boon-Chapman's Soluta Health.

30. Killyon directly participated in the misconduct, in addition, he discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct of the lower level employees at Soluta Health to refuse inmates in need of emergency medical care the request to be transported to the hospital grossly deviating from any acceptable standard of care for a physician. He may be served wherever he may be found.

**Defendant, Alexis Ensley, M.A.**

31. Defendant, Alexis Ensley, M.A. is and was at all times relevant to this action a medical assistant employed by Boone Chapman under Soluta Health, Inc., and/or the County and assigned to the Galveston County Jail serving as a medical assistant at the Galveston County Jail. Ensley is a "person" under 42 U.S.C.§1983 and at all times relevant to this case acted under color of law. She is sued in her individual capacity. Ensley directly participated in the misconduct, denied medical

care to Mr. Cortez. She discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct with other employees at Soluta Health to refuse inmates in need of emergency medical care and failed to request Mr. Cortez be transported to the hospital. She may be served wherever she may be found.

**Defendant, Kimberly Boykins**

32. Defendant, Kimberly Boykins, is and was at all times relevant to this action a medical provider employed by Boone Chapman under Soluta Health, Inc., and/or the County and assigned to the Galveston County Jail serving as a medical assistant at the Galveston County Jail. Boykins is a "person" under 42 U.S.C.§1983 and at all times relevant to this case acted under color of law. She is sued in her individual capacity. Boykins directly participates in the misconduct, denied medical care to Mr. Cortez. She discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct with other employees at Soluta Health to refuse inmates in need of emergency medical care and failed to request Mr. Cortez be transported to the hospital.

## **FACTS**

33. Mr. Cortez resided in Los Fresnos, Texas and he is survived by his daughters, Mrs. Jacqueline Cortez Burlingame, and Mrs. Jenny Espinoza and his mother Amelia Cortez. He was loved by many. He loved his daughters, grandkids, mother, extended family, and friends.

34. He was a mechanic, a former sheet metal worker, and a cook, all occupations he loved. He had every intention of securing release from jail and resuming his family life and embarking on a new career awaiting him upon his release.

35. Jorge "George" Cortez suffered from longtime admitted battle with substance dependency, for which he sought help.

36. On April 7, 2017, Jorge "George" Cortez was able to be placed in a treatment program with help from a Galveston county court judge, who ordered the treatment, for the first time in his life. He was hopeful. He remained in the Galveston County Jail until his placement was processed and a "bed" was ready for him.

37. Mr. Cortez was booked and assigned to his top bunk and cell location, B-300.

38. At the time Jorge "George" Cortez was taken into custody he was a post-trial detainee.

39. A few weeks after he was placed in custody of Galveston County, Mr. Cortez remained in the jail awaiting entry to the treatment program, was around the time he began complaining about feeling dizzy.

40. Suffering from undiagnosed Mesothelioma, Mr. Cortez complained of dizziness, and the need to be reassigned from a top to a lower bunk out of fear he would fall, if he continued to have to climb to the top bunk.

41. Mr. Cortez complained of dizziness requested a lower bunk, to prevent him from falling.

42. The other inmates in the facility noticed that Mr. Cortez was suffering and having difficulty getting up to the top bunk and insisted he take a highly coveted lower bunk.

43. When Deputy Doe discovered he was using a lower bunk while being assigned to a top bunk he was forced back to the top bunk, and required to secure his bed reassignment from the privately operated medical department, Soluta Health, a wholly owned subsidiary of Boon-Chapman Benefit Administrators Inc.

44. Mr. Cortez's reassignment request was denied by the medical department.

45. Mr. Cortez continued to follow the rules and use the top bunk only; however, the cause of his dizziness was never evaluated, monitored, treated, nor alleviated.

46. He was denied a bed reassignment. He fell from the assigned top bunk, he severely injured his lung.

47. Mr. Cortez began having difficulty breathing after his fall.

48. He, along with other inmates, complained about his deteriorating condition, after the fall, to the jail medical staff and deputies. The complaints went ignored for weeks.

49. Mr. Cortez went back to the medical department, Soluta Health, to be examined by the medical providers.

50. He was released back to his dorm with over the counter ibuprofen pills, his new breathing difficulty and previous dizziness symptoms were not addressed.

51. Mr. Cortez's difficulty breathing continued and became so severe that the other inmates- initiated calls home to report Mr. Cortez's condition to their own family and friends, and Mr. Cortez's daughter, so they could contact Mr. Cortez's family, out of concern for Mr. Cortez's health.

52. Mr. Cortez continued to have health concerns and difficulty breathing. He was not eating.

53. On May 15, 2017, his daughter Jenny Espinoza and his son-in-law Arturo Espinoza went to visit him he complained of being unable to breathe and weight loss.

54. He went back to the medical department due to his worsening condition. The medical department personal for Soluta Health refused to send him to the hospital

55. Mr. Cortez was moved to the violent cell, in the FSP[1], as described by the jail standards commission.

---

[1] See Tex. Admin Code. Sec. 261.334. Violent Cells.  Jail standards describe the cell that infirmed inmates in the Galveston County Jail are housed as a Violent cell. "A facility may contain one or more single occupancy cells for the temporary holding of violent persons. Violent cells shall include the following features and equipment. (1)Furnishings... A bench abutting the wall, the length or width of the cell, at least two feet-three inches wide and six feet-three inches long and not more than eight inches above the floor may possibly be provided in lieu of a hammock. (2)Plumbing. Flushing type floor drains with outside controls shall be provided. (3)Cell Size. Cell shall contain not less than 40 square feet of floor space. (4)Padding. Walls, floor, and bench shall be completely covered with a material to protect the inmate from self-injury. The type of material used to cover the walls, floor, and bench shall be fire resistive and nontoxic."

56. FSP Violent cell also known as Full Suicide Protocol is an area of the jail that has 10 cells for inmate housing, some cells are negative flow cells for inmates exposed to tuberculosis, and all of the others are violent cells.

57. This area is not monitored by medical personnel, rather full-time by Galveston County law enforcement deputies who are not trained to provide medical assistance.

58. The deputies require no specialized training prior to being assigned to this area. The deputies' assignment to this area is regularly rotated.

59. The inmates in violent cells receive no different medical attention than they would if they were an inmate with in general population.

60. On April 23, 2017 Mr. Cortez was reassigned from general population, into a solitary confinement punitive violent cell, per Sgt. Jennifer Cagnon.

61. Although Mr. Cortez was moved to the solitary violent cell, he notified his family that he was not given any medication for his pain at all, after being placed in the punitive cell; although there seems to be notes that appear to be fabricated that reflect the following:

62. May 4, 2017 given "meds[2]",

63. May 10, 2017 given "meds",

64. May 16, 2017 complained of chest pain May 19, 2017 triage was noted

---

[2] It is not clear what exactly is meant by"Meds" as it is not described in the records.

65. May 22, 2017 medical from 721-737, and 0928-1030am

66. May 23, 2017 medical 1700-1735

67. May 25, 2017 missed meds, while in solitary May 26, 2017 given "meds" once,

68. May 27, 2017 given "meds" once,

69. May 28, 2017 given "meds" once,

70. May 30, 2017 given "meds" once,

71. May 31, 2017 given "meds" once,

72. May 31, 2017 seen by medical for shoulder pain, but no meds indicated.

73. Although noted, medication rounds for Mr. Cortez's were missed on most occasions, because he was too weak to get up and come to the door.

74. A deputy took notice of Mr. Cortez's weak condition and insisted the medical department go to Mr. Cortez's cell and render medical aid and feed him.

75. This request by the deputy was denied as well. The deputy took efforts to help Mr. Cortez get medical attention and he physically took Mr. Cortez to the medical department, housed only feet away, for care.

76. Mr. Cortez collapsed and was unconscious that is what finally caused the medical department to summon emergency services to the jail and to assist Mr. Cortez.

77. Along with the Defendants' failure to provide Mr. Cortez with adequate medical care, by evaluating his dizziness symptom, prior to the fall and breathing problems after the fall, the Defendants refused to transport Mr. Cortez to the local hospital until he became gravely ill.

78. On May 31, 2017, Mr. Cortez was taken to nearby UTMB Galveston. He was diagnosed with a traumatic pneumothorax with pleural effusion[3] which was caused by the fall from the top bunk of his cell in B-300, approximately two weeks prior to his admission to UTMB

79. Mr. Cortez suffered throughout the entire month of May, until the last day when he collapsed and was transported to UTMB hospital.

80. He was diagnosed with Pneumothorax, Pleural effusion on right lung upon admission.

81. A few weeks after entering the hospital Mr. Cortez had surgery. The surgery seemed to be successful, but Mr. Cortez took another unexpected turn requiring another surgery.

82. Extracorporeal Membrane Oxygenation ("ECMO") was recommended to treat the traumatic pneumothorax with pleural effusion; however, he was not a good

---

[3] A traumatic pneumothorax is when part of your lung collapses. A traumatic pneumothorax is caused by an injury that tears your lung and allows air to enter the pleural space. Injuries that cause a traumatic pneumothorax include: A bicycle accident or a fall; A motor vehicle accident; An accidental injury that happens during a medical procedure; A gunshot wound; A knife injury.

candidate for the ECMO while his doctors treated his underlying suspected Mesothelioma.

83. On June 20, 2017 while Mr. Cortez remained in the hospital, he was released from custody of the Galveston Sheriff due to his grave condition, and accumulation of hospital fees.

84. On June 23, 2017, Mr. Cortez was taken off life support, he stopped breathing and he was pronounced dead soon after, at 9:20pm. He had just turned 58 years old, on June 13, 2017.

85. Mr. Cortez died at UMTB Galveston within 24 days of being transported from Galveston County's jail.

86. The cause of his death was determined to be a result of complications from Mesothelioma and pneumothorax with pleural effusion.

87. Mr. Cortez's untimely death was preventable. The Jail medical staff members failed to reassign Mr. Cortez to a lower bunk.

88. The Jail medical staff members failed to provide adequate medical care to Mr. Cortez. The Doe nurses and Kathy White failed to properly monitor Mr. Cortez while he was in the violent cell.

89. Despite Mr. Cortez's distress, not one of the Jail medical staff members summoned emergency medical services for Mr. Cortez.

90. The failures of the defendants stated herein were a proximate cause of Mr. Cortez's untimely death.

**Kathy White aka Kathy Jean Jordan**

91. Kathy White aka Kathy Jean Jordan is the healthcare administrator for the private contractor, Boone Chapman, Soluta Health, Inc., a registered nurse and policymaker for Galveston County's jail medical department.

92. She is a convicted felon, as indicated by her federal criminal conviction, for possession of cocaine with intent to distribute.

93. She has a serious criminal history and substance abuse history involving drugs and alcohol abuse. Including an arrest for other possession of controlled substance charges and driving while intoxicated charge and conviction.

94. Kathy White was made aware of Mr. Cortez deteriorating condition; he was weak and unable to eat, drink, or take his medication. She allowed Mr. Cortez to remain the violent cell located in the FSP violent cell likely based on "monitoring"; however, no orders for monitoring were made by Kathy White or anyone. She was deliberately indifferent to Mr. Cortez's serious medical needs by failing to allow him to be transported to a hospital without approval, after he suffered from the diagnosed traumatic pneumothorax, injury to his lung, after his fall from the top bunk that he was assigned to at the Galveston County Jail.

95. She had an interest in recovering bonuses based upon her saving money in medical care, so she implemented a policy to reduce inmates needs for emergency room visits by placing inmates in the jail's violent cell area where there are no toilets, drinking fountains, sinks, bedding, or medical modalities only a raise concrete bench covered with a hard fabric material, until the inmate faced death and absolutely need for emergency intervention and transportation to the hospital. This amounts to medical negligence and deliberate indifference to Mr. Cortez's serious medical needs.

96. This amounts to medical negligence and deliberate indifference to the jail inmates, including Mr. Cortez's medical needs.

**Boon-Chapman Benefit Administrators Inc.**

97. "Boon-Chapman" is the private health contractor that was corporation medical provider under a memorandum of understandings (MOU) contract with Galveston County to provide medical, psychiatric, dental and pharmaceutical services at the Galveston County Jail, it is the parent company of Soluta Health.

98. It sets the policy and procedures that are implemented in the Galveston County jail as it relates to the Galveston County jail medical needs for the inmates.

99. Boon-Chapman allowed and encouraged Mr. Cortez to remain on the top bunk, be placed in violent FSP cell, and remain in the jail violent FSP cell during his stay in the jail.

**Soluta Health, Inc./Soluta, Inc.**

100.    "Soluta" is a corporation medical provider under contract with Galveston County through to provide medical, psychiatric, dental and pharmaceutical services at the Galveston County Jail. Soluta Inc. was established in April 2015, is an alter ego for Soluta Health Inc. a technology platform company Soluta allows and encourages its employees to cut cost by refusing its inmates access to emergency medical services at the hospital, as was with Mr. Cortez when he was placed in violent FSP cell, and left until he collapsed.

101.    Soluta allowed and encouraged Mr. Cortez to remain on the top bunk, be placed in violent FSP cell, and remain in the jail violent FSP cell during his stay in the jail.

102.    Soluta has a policy to eliminate expenses at the cost of inmate's health and medical care, refusing to transfer inmates to hospitals, unless an inmate's life is in danger.

**Dr. Garry Killyon, M.D.**

103.    Dr. Garry Killyon, M.D. is and was at all times relevant to this action the Physician employed by Soluta in the Galveston County Jail. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and in his official capacity. He was a county policy maker with respect to jail policies and procedures. Dr. Killyon saw

Mr. Cortez on more than one occasion, he prescribed Ibuprofen after Mr. Cortez complained he had difficulty breathing and failed to reassign Mr. Cortez to a lower bunk after he complained of dizziness and conveyed his concern that he would fall from the top bunk. After it was evident that Mr. Cortez needed critical additional care, Dr. Gary Killyon failed to summon emergency services for Mr. Cortez himself and discouraged the summoning of emergency services by others. In addition, he discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct of the lower level employees at Boon-Chapman's Soluta Health.

104.     This amounts to medical negligence and deliberate indifference to the jail inmates, including Mr. Cortez's medical needs.

**Alexis Ensley, M.A.**

105.     Alexis Ensley, M.A. is and was at all times relevant to this action a medical assistant employed by Boone Chapman under Soluta Health, Inc., and/or the County and assigned to the Galveston County Jail serving as a medical assistant at the Galveston County Jail. Ensley is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual capacity. Ensley directly participated in the misconduct, denied medical care to Mr. Cortez. She discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct with other employees at Soluta Health to refuse inmates in need of emergency medical care and failed to request Mr. Cortez be transported

to the hospital. This amounts to medical negligence and deliberate indifference to the jail inmates, including Mr. Cortez's medical needs.

**Kimberly Boykins**

106.     Kimberly Boykins, is and was at all times relevant to this action a medical provider employed by Boone Chapman under Soluta Health, Inc., and/or the County and assigned to the Galveston County Jail serving as a medical assistant at the Galveston County Jail. Boykins is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual capacity. Boykins directly participate in the misconduct, denied medical care to Mr. Cortez. She discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct with other employees at Soluta Health to refuse inmates in need of emergency medical care and failed to request Mr. Cortez be transported to the hospital.

**Dr. Gary Beach**

107.     Dr. Gary Beach is Boon-Chapmans, private medical contractor's and Medical Director. He was the policy-maker with respect to jail policies and procedures, in May 2017.

108.     Although the Dr. Beach did not work at the Galveston County Jail directly, he participated in the constitutional violations and misconduct when he encouraged cost savings measures that resulting in his staff at Boone Chapman's

Soluta Health not seeking emergency medical treatment for inmates to avoid transporting inmates to the hospital.

109.     He discreetly sanctioned, approved, and knowingly consented to the unconstitutional conduct of the lower level employees, with bonuses for incentive. This amounts to medical negligence and deliberate indifference to the jail inmates, including Mr. Cortez's medical needs.

**Galveston County**

110.     Galveston County the policy, practice, and custom is to delegate the duty to provide health care to its inmates including Jorge "George" Cortez.  Policy, practice, and custom of cruel and unusual punishment in the Galveston County Jail to place its infirmed inmates in punitive violent cells as opposed to sending the infirmed inmate to the hospital in an effort to cut cost of care for inmates, delay in providing medical and failure to provide adequate medical care when an inmate has a serious medical need is unexplainable and copious.

_Other Documented Deaths in Galveston County's Jail custody in the Past Five Years_

111.     There may possibly be more deaths, but like Jorge Cortez, they go unreported to the Texas Attorney General's office, due to the fact of the inmate being "released from custody" before being pronounced dead, or death of an unborn child[4].

---

[4] Galveston would report deaths of unborn in the past but has since stop reporting such deaths.

112.     According to the Attorney General's Custodial Death report[5], in the past 5 years, at least 4 inmates have died in the custody of Galveston County Jail besides Jorge Cortez. Another 1 unborn child has died as a result of Galveston County's adopted policy from their Medical Contractor, Boon Chapman and Soluta.

113.     On June 27, 2013, Arthur Lee Linear, was pronounced dead as a result of Galveston County's policy on refusing to send inmates to the Hospital that are in need of serious emergency Medical care, after complaining of chest pains, resulting in a delay in medical care and ultimately causing his untimely and preventable death.



Arthur Lee Linear

114.     On March 15, 2015, 32-year-old Jesse Clayton Jacobs was pronounced dead as a result of Galveston County's policy on refusing to send inmates to the Hospital that are in need of Medical care, after depriving him of this physician prescribed and monitored Xanax prescription, resulting in a delay in medical care and ultimately causing his untimely preventable death.

---

[5] https://oagtx.force.com/cdr/cdrreportdeaths



115.    On February 28, 2016, Ms. Denise Pope was pronounced dead as a result of

Galveston County's policy on refusing to send inmates to the Hospital that are in

need of Medical care, after the pregnant inmate complaining of initially spotting

then heaving bleeding, resulting in a delay in medical care and ultimately causing

her untimely preventable death of her unborn child.

116.    On November 15, 2017, Ms. Jerry Louise Biggers-Hill was pronounced

dead as a result of Galveston County's policy on refusing to send inmates to the

Hospital that are in need of serious emergency medical care, after complaining of

breathing difficulty, resulting in a delay in medical care and ultimately causing her

untimely preventable death.



117.     On December 22, 2017, Mr. Barry Edward Phillips was pronounced dead

as a result of Galveston County's policy on refusing to send inmates to the

Hospital that are in need of serious emergency Medical care, after complaining of

breathing difficulty, resulting in a delay in medical care and ultimately causing his

untimely preventable death.



**Sheriff Henry Trochesset**

118.     Sheriff Henry Trochesset is the policy maker for the county with respect to

policies and procedures at the Galveston County Jail ("Jail"). Sheriff Trochesset

adopted the policies of the Medical Provider, Boon Chapman's wholly owned

subsidiary, Soluta Health.

119.     He discreetly sanctioned, approved, and knowingly consented to the

unconstitutional conduct of the subordinates, and contractors. Sheriff Trochesset

had direct involvement in the decisions with regard to Plaintiffs' housing, and

medical care.

120.     Sheriff Trochesset was deliberately indifferent to Jorge "George" Cortez's serious medical needs by allowing the contracted medical providers to engage in the policy, practice, and custom of placing his inmates in need of serious medical care, in punitive violent cells although the inmates are not being punished, thereby depriving his inmates of adequate medical care, including Mr. Cortez. When he failed to train his deputies to transport seriously ill or injured inmates to the hospital, when the contracted medical provider fails or refuses to do so. When he failed to train his deputies to allow seriously ill or injured inmates to be reassigned to adequate bed assignment, when the need is or should be recognized, and medical provider fails or refuses to do so.

**Chief Mary Johnson**

121.     Mary Johnson is one of two chief corrections officers for the Galveston County Jail. She is the chief responsible for the inmates' care at the Galveston County jail including healthcare, food clothing, and housing. She failed to properly supervise the medical providers, and jailers relating to the care of the inmates to ensure the inmates under her care, custody and control received adequate medical care. She failed to properly train the medical providers, and jailer to proper units are t assign inmates to holding cells and beds that caused their conditions to worsen or become fundamentally dangerous when an inmate is suffering from a serious medical need.

**Policies, Practices and Culpable Conduct**

122.     The risk of dizzy, infirmed, or older inmates falling from top bunks was well known in the Galveston County jail on or about May 10, 2017, by each defendant including, Galveston County, Galveston County's Sheriff Trochesset, his Chief of Corrections Mary Johnson,  Doe Administrators, Doe Deputies, the Health Care administrator, Kathy White,  Dr. Beach, Doe Physicians, Doe Nurses, and Doe Physician Assistants.

123.     The risk of harm and death by placing an injured or ill inmate in need of hospital care in a solitary violent cell was well known in the Galveston County jail on or about May 20, 2017, Galveston County, Galveston County's Sheriff Trochesset, his Chief of Corrections Mary Johnson, Doe Administrators, Doe Deputies, the Health Care administrator, Kathy White, Doe Physicians, Doe Nurses, and Doe P.A.s.

124.     Since  Mr. Cortez injury and death occurred two years after another inmate, Mr. Jesse C. Jacobs, suffered the same type of demise in violent cell while in the Galveston County's Jail.

125.     Boon-Chapman and Galveston County, through its Sheriff Trochesset and Healthcare Administrator directed the Jail staff, and its medical staff members to follow the policies, practices, and customs of not allowing inmates who are in need of emergency care to transported to the hospital while in the custody of the Galveston County jail, which caused inmates to suffer, untreated, serious life-threatening symptoms as a result of being banished to the violent cell.

126.     Such policies, forbidding emergency medical attention to inmates in the Galveston County jail, unless the inmates is at the brink of death, and only by the medical department personally caused the unreasonable risk of harm.

127.     When severe medical conditions arise, the inmates are placed in a violent cell in the FSP violent cell area of the Galveston County Jail. This practice is the moving force behind the cause of the injuries suffered by Mr. Cortez.

128.     By following such policies Defendants were deliberately indifferent to the serious severe symptoms and medical needs of Mr. Cortez.

129.     Galveston County Sheriff Henry Trochesset, Galveston County, Galveston County Jail Administrator Mary Johnson, Boon-Chapman, Soluta Health, and Kathy White, Doe County Administrators, Doe Deputies, the Health Care administrator, Doe Physicians, Doe Nurses, and Doe P.A.s were also deliberately indifferent to the serious medical needs of Mr. Cortez by failing to train staff and implement jail policies, practices, customs and usages that adequately addressed the obvious and known health and safety risks to inmates entering the Jail and injured while in the County jail's custody.

130.     Galveston County Sheriff Henry Trochesset, Galveston County, Galveston County Jail Administrator Mary Johnson, Boon-Chapman, Soluta Health, and Kathy White, Doe County Administrators, Doe Deputies, the Health Care administrator, Doe Physicians, Doe Nurses, and Doe PAs, each supervisory defendants failed to train staff when emergency services should be summoned to

take an inmate to the local hospital emergency room, as opposed to FSP violent cell. Galveston County Sheriff Henry Trochesset, Galveston County, Galveston County Jail Administrator Mary Johnson, Boon-Chapman, Soluta Health, and Kathy White, Doe County Administrators, Doe Deputies, the Health Care administrator, Doe Physicians, Doe Nurses, and Doe P.As. acted with deliberate indifference to the serious medical need of Mr. Cortez when Mr. Cortez began demonstrating severe symptoms, shortness of breath, chest pains, weakness which went untreated, beyond ibuprofen.

131.    Galveston County Sheriff Henry Trochesset, Galveston County, Galveston County Jail Administrator Mary Johnson, Boon-Chapman, Soluta Health, and Kathy White, Doe County Administrators, Doe Deputies, the Health Care administrator, Doe Physicians, Doe Nurses, and Doe P.A.s. acts and omission are violations of Mr. Cortez's constitutional right to be free from cruel and unusual punishment and receive adequate medical care resulted from a policy, pattern, custom and practice of deliberate indifference to the serious medical needs of its inmates and Mr. Cortez, placement in FSP violent cell when he began to exhibit severe symptoms of distress due to his fall from the top bunk came at the direction and encouragement of the policymakers, Galveston County Sheriff, Henry Trochesset, his chief of Corrections, Mary Johnson, the Health Care administrator, Kathy White, and Dr. Garry Killyon. The Defendants ignored Mr. Cortez's complaints, intentionally failed to provide medical treatment him and had wanton

disregard, and deliberate he Defeindifference for Mr. Cortez's serious medical needs when he complained of dizziness, and having difficulty breathing.

**Medical Examination Autopsy of Jorge "George" Cortez**

132.     The Medical Examiner found the cause of Mr. Cortez's death was due to complications of Mesothelioma, and acute pulmonary injury, consistent with ARDS. He developed his injury while in custody of the Galveston County jail.

133.     On June 9, 2017, prior to Mr. Cortez's death, a letter of preservation not to destroy and suspend all regular retention procedures for any videos or audio relating to Jorge Cortez's custody was immediately sent to Galveston County.

134.     The jail medical contractors, Kathy White, John Doe Jailer and Soluta health left Mr. Cortez in a violent cell without any person entering the cell for hours.

135.     The Medical records provided are inaccurate. The records have missing documents, entries and specious entries. There appears to be entries made detailing Mr. Cortez's condition; however, there was no actual visits from medical personnel that coincide with the entry time and date.

136.     Plaintiffs assert that the death of Mr. Cortez was the result of Defendants acting jointly and severally, that the death and harm suffered was the result of Defendants' conduct motivated by evil intent, and with callous deliberate indifference to the federally protected rights of Mr. Cortez. The Defendants further

engaged in efforts to impede discovering the constitutional violations by

withholding and destruction of records, including video and audio of Mr. Cortez

while in the custody of Galveston County Jail.

137.    In addition to the civil rights violations, Defendant Galveston County has

blocked and refused the release video and audio recordings depicting Mr. Cortez's

his entire period of incarceration in the Galveston County Jail, the full and

complete set of medical records of Mr. Cortez in the Galveston County Jail, the

audio and video recordings of his daughters' visits, in effort to prevent Plaintiffs

from discovering exactly what happened to Mr. Cortez while in the custody of the

Galveston County Jail.Defendants were deliberately indifferent to Mr. Cortez's

serious medical needs failed to treat his Pneumothorax, Pleural effusion on right

lung symptoms, after his fall as a result of defendants' failure to reassign Mr.

Cortez from the top jail bunk, other than placing him in a solitary confinement

punitive violent cell.

138.    Mr. Cortez was placed in a solitary violent cell, called FSP, without notice

or an opportunity to be heard, in violation of his due process under the Fifth and

Fourteenth amendment, where he remained until he collapsed, and had to be

picked up and physically transported to the medical department, then rushed to the

hospital, only to be pronounced dead the 24 days later.

139.    Mr. Cortez ' Eighth Amendment Rights have been violated by the

following individuals and entities: Galveston County Sheriff Henry Trochesset,

Galveston County, Galveston County Jail Administrator Mary Johnson, Boon-Chapman, Soluta Health, Kathy White, Garry Killyon, Alexis Ensley, and Kimberly Boykins, Doe County Administrators, Doe Deputies, the Health Care administrator, Doe Physicians, Doe Nurses, and Doe P.A.s.

140.    The official policy, or custom of which Sheriff Trochesset and Mary Johnson violated was failing to train or supervise the contract medical providers hired to provide medical care to the Galveston County inmates. Allowing and adopting a policy that allowed inmates to be placed in solitary confinement violent cells instead of receiving emergency medical care from a hospital. These acts and omissions by the Sheriff and Mary Johnson was a policy implemented by Sheriff Trochesset and Mary Johnson by adopting the medical provider's policy.

141.    Sheriff has actual or constructive knowledge of the policy. Admittedly, Mary Johnson and nurse Kathy White agree ill inmates should be placed in the violent cells for medical monitoring in the jail.

142.    This failure to seek emergency service for Mr. Cortez, and the delay in medical care was a constitutional violation whose "moving force" is that policy or custom to allow inmates to remain in FSP and not be transported to the hospital.

143.    The known and foreseeable risk are avoided by responding to an inmate's serious medical need.

144.     Mr. Cortez was deprived of food and water, and medication for his pain, and continuing after the need was recognized by Galveston County

145.     Galveston County jail was cited six years ago for not dispensing medications ordered by a doctor.

146.     The policy of Sheriff Trochesset, Mary Johnson and Galveston County policies caused the injury of Mr. Cortez, and deprived Mr. Cortez of his constitutional right.

147.     Sheriff Trochesset and Mary Johnson's policy of allowing ill inmates with serious medical needs to be place in a violent cell instead of being sent to the hospital, under the guise of closer monitoring by the medical department is persistent and widespread in the Galveston County Jail as having the effect of law. A pattern of incidents has occurred because of this policy causing further injury to other inmates.

148.     All Jail medical staff are aware of the policy that they are not to call for emergency transport to the hospital even if the immediate need exists unless there is approval first and only by medical personnel.

149.     Mr. Cortez rights were violated based on denial of medical care, before the delay in medical care, and ultimately inadequate medical care.

## FIRST CLAIM

**Galveston County's Liability Under Monell**

150.     Plaintiffs incorporates all preceding paragraphs as if set forth throughout the Complaint. Plaintiff asserts claims under the Eighth Amendment.

151.     Galveston County has a custom, policy, practice and procedure of:

152.      denying transport to the hospital to all persons in the jail including those, like Mr. Cortez with verifiable emergency medical needs, knowing the risks; as was the case with other inmates, Jesse C. Jacobs, Jerry Biggers Hill, and Denise Pope.

153.     refusing to transport inmates from the jail to the hospital and placing inmates in violent cells;

154.     delaying treatment of inmates with serious medical needs, difficulty breathing, and punctured lung, caused by the denial of a simple request to be assigned to a lower bunk;

155.     failing to adequately treat inmates suffering injuries knowing the risks;

156.     failing to transport inmates with serious emergency medical needs to hospital setting even after losing weight quickly as Mr. Cortez experienced.

157.     Allowing jailers to sleep at the front desk rather than monitor sick inmates in the medical unit;

158.     hiring unqualified deputy's or deputies with a propensity to violate Constitutional rights. Failing to monitor inmates in the medical unit for the Texas Jail Standards Commission proscribed times, every 15 minutes; failing to

discipline or train and supervise deputies allowing an untrained in medical

personnel and deputies, to complete a Jail Death Report to the State Attorney

General's office; not having the proper policies in place to prevent the

Constitutional violations suffered by plaintiffs as herein described;

159.     placing ill inmates, like Mr. Cortez in violent cells with only a drain to use

the restroom. The cell has no sink, drinking fountain, toilet, or shower.

160.     As alleged herein, multiple instances of misconduct by Galveston County

and the sheriff and deputies of the Galveston County Sheriff's  establishes that

Galveston County is legally responsible for the conduct of Mary Johnson, Boon-

Chapman Benefit Administrators Inc., Soluta, Inc, Soluta Health, Inc, Kathy

White, Aka, Kathy Jean Jordan, Gary Beach, Garry Killyon, Alexis Ensley, and

Kimberly Boykins, Doe Policy Makers, and Doe Medical Provider 1-25.

**SECOND CLAIM-SUPERVISOR LIABILITY**

161.     Sheriff Trochesset, Mary Johnson, nurse Kathy White Dr. Killyon, Gary

Beach, Garry Killyon, and Doe Policy Makers 1-25, Doe Medical Providers 1-25,

and Doe Jailer 1-25 as supervisors failed to train or supervise the officers who

attended or should have attended to Mr. Cortez.

162.     The officers routinely sleep on the job rather than medically monitoring

inmates such as Mr. Cortez. This conduct caused Mr. Cortez to be deprived of

medically necessary care and treatment for injuries.

163.     The failure to train or supervise constituted deliberate indifference to Mr.

Cortez's right to adequate medical care, timely medical care and denied him his

constitutional right to adequate medical care for his injuries.

**Ratification/Acts of Policymaker**

164.     Mr. Cortez incorporates all preceding paragraph as if set fully set forth

herein.

165.     Mr. Cortez complained of his need for bunk reassignment and need for

medical treatment to the Jailer of which only one responded, after an unreasonable

delay.

166.     Sheriff Andrew Trochesset and Mary Johnson are the relevant policy maker

yet nothing was done to remedy the medical complaints.

167.     This happened in several previous and subsequent cases where denial of

medical care occurred resulting in injuries and death. As such, Galveston County

ratified, Sheriff Trochesset's,, Mary Johnson, nurse Kathy White, Gary Beach,

Garry Killyon, Alexis Ensley, and Kimberly Boykins and Doe Policy Makers 1-

25, Doe Medical Providers 1-25, and Doe Jailer 1-25 actions as Galveston County

and their own policies, practices, customs and procedures.

## THIRD CLAIM-CONDITIONS OF CONFINEMENT- GALVESTON COUNTY, SOLUTA HEALTH AND BOON-CHAPMAN

168.     Plaintiff incorporates the facts as set forth herein.

169.     The conditions of confinement in the Galveston County Jail was such that

Mr. Cortez with severe injuries was placed in a punitive violent cell designed for

inmates who have behavioral issues and not those who need medical attention.

170.     The Galveston County, and Galveston County Sheriff and other defendants

required inmates that have serious medical needs to be housed in the jail's FSP

violent cells, based on the need for "monitoring" although no medical personal is

assigned to that department.

171.     These conditions create additional pain and suffering, anxiety, and panic.

The violent cell consists of no toilet, no bed or mattress to rest a sick individual. In

fact, the risk of injury is even greater where no place habitable for humans exist as

is the condition in the Galveston County Jail. Mr. Cortez' last days in the jail

consisted of a concrete floor with a polyurethane coating that is almost as hard as

the concrete layer.

172.     An audio component of the condition exists in the video for which

Galveston County has not provided to Mr. Cortez in this case.

## FOURTH CLAIM-TEXAS WRONGFUL DEATH AND SURVIVORSHIP ACTION

173.     Plaintiff incorporates herein the facts as set forth throughout the complaint.

Plaintiff files these his wrongful death and survivor action against each Defendant,

Galveston County Sheriff Henry Trochesset, Galveston County, Galveston County

Jail Administrator Mary Johnson, Boon-Chapman, Soluta Health, Kathy White, Gary Beach, Garry Killyon, Alexis Ensley, and Kimberly Boykins, Doe County Administrators, Doe Deputies, the Health Care administrator, Doe Physicians, Doe Nurses, and Doe P.A.s. pursuant to Texas Wrongful Death Statute and Survivorship Statute and asserts that Mr. Cortez death was a result of the defendants acts and omissions.

174.    Medical providers listed above, including were aware of the foreseeable risk of depriving Mr. Cortez his request to be moved to a lower bunk. They nonetheless deprived Mr.Cortez of his request and he fell injuring his body and puncturing his lung. He was placed in FSP, where he was left to die.

## FIFTH CLAIM-MEDICAL NEGLIGENCE – Chapter 74 Texas Healthcare Liability Act.

175.    Plaintiff incorporates herein the facts as set forth herein. All perquisites for filing suit have been satisfied Boon-Chapman Benefit Administrators Inc., Soluta, Inc, Soluta Health, Inc, Garry Killyon, Alexis Ensley, Kimberly Boykins, and Kathy White, owed Mr. Cortez a duty to provide him adequate medical care.

176.    Boon-Chapman Benefit Administrators Inc., Soluta, Inc, Soluta Health, Inc, Garry Killyon, Alexis Ensley, and Kimberly Boykins, Kathy White, Doe Medical Provider 1-25 breached their duty of care and deviated from the standard of care for healthcare medical physicians, nurse, medical providers by:

177.     failing to address Mr. Cortez's complaints of dizziness

178.     failing to allow his bed to be reassigned from the top bunk to a lower bunk to avoid injury that could occur if he fell from the top bunk.

179.     failing to prescribe Mr. Cortez his medically necessary, pain medication,

180.     failing to transport Mr. Cortez to a hospital after becoming aware that Mr. Cortez was having breathing pain, and difficulty; and,

181.     finally, they breached their duty to medically monitor Mr. Cortez when he was housed in the jail.

182.     As a result, this breach of care. denial or care and refusal to transport to a hospital was a proximate cause of Mr. Cortez' pain and suffering, and ultimately his death. A preventable death.

183.     Plaintiff incorporates the facts set forth above herein. Dr. Killyon was aware of the risks associated with depriving Mr. Cortez of his request to be provided a safe bed assignment, failure to timely address his serious medical needs after he fell and injured his lung and began having pain while breathing and difficulty breathing.

184.     This failure to treat Mr. Cortez's injuries caused of Mr. Cortez to suffer unnecessary. Dr. Killyon failed to recommend that Mr. Cortez be transported to a hospital once he learned Mr. Cortez was complaining that he could not breathe and was having pain that could not be addressed at the jail.

185.     Dr. Killyon was involved in several Galveston County jail injuries based on failure to provide adequate medical care.

186.     Dr. Killyon's failure to treat Mr. Cortez timely was a proximate cause of Mr. Cortez injures, pain and suffering and his ultimate death.

187.     Dr. Killyon failed to recommend that Mr. Cortez be transported to a hospital after the fall that caused Mr. Cortez injuries;

188.     Dr. Killyon was aware of the risks associated with depriving Mr. Cortez of his request that his bed assignment to the top bunk be reassigned to the bottom bunk and depriving medical care after the fall, for his breathing problems, and pain associated with the injury to his lung.

189.     Dr. Killyon to failed to respond to Mr. Cortez's serious medical needs.

190.     Dr. Killyon prescribed Mr. Cortez, Ibuprofen taken once even few days after he fell.

191.     Dr. Killyon failed to recommend that Mr. Cortez be transported to a hospital after his fall causing Mr. Cortez injuries.

192.     Dr. Killyon deviated from the appropriate standard of care as detailed above.

**DAMAGES**

193.     Plaintiffs request the following relief:

**Punitive Damages**

194.     Plaintiffs request punitive damages against each individually-named defendant. Exemplary damages based on conduct of refusing to discourage the summoning of emergency services for Mr. Cortez and allowing Mr. Cortez to continue to suffer daily locked in a violent cell without access to a toilet and an ultimately a humiliating death without regard to his serious medical needs, while in the custody of the Galveston County Jail and care of Boon-Chapman, Soluta Health's medical personnel, Physicians, Nurse Practitioner, Registered Nurses, Licensed vocational nurses, emergency medical technicians, that was outrageous, malicious, and morally culpable.

195.     Mr. Cortez's death resulted from the joint and several acts and omissions of Defendants for which Plaintiffs seek punitive and exemplary damages against each individual Defendant (as allowed by law) in an amount appropriate to punish each individual Defendant, and deter others from engaging in similar conduct;

196.     Award punitive damages against Galveston County and Galveston County Sheriff, Henry Trochesset, Mary Johnson, Boon-Chapman Benefit Administrators Inc., Soluta, Inc, Soluta Health, Inc, Kathy White in an amount to be shown at trial;

197.     These actions hereby entitle Plaintiffs to punitive/exemplary damages;

**Actual Damages**

198.     Compensatory general damages against each Defendant, jointly and severally, in the amount proven at trial.

199.     As wrongful death beneficiaries, Plaintiffs seeks actual damages, both general and special, for the loss of their father, Mr. Cortez, for the following specific elements of damages:

200.     Pecuniary Loss resulting from the death of Mr. Cortez including, but not limited to, the care, maintenance, support, services, education, advice, counsel, and reasonable contributions of a pecuniary value, loss of inheritance that the surviving family would have received from Mr. Cortez, had he lived.

201.     Termination of the Family Relationship: The positive benefits flowing from the love, support, companionship, and society that Mr. Cortez and Mr. Cortez, would in reasonable probability, have received from Mr. Cortez, had he lived.

**Pain and Suffering**

202.     Physical pain and suffering sustained by Mr. Cortez from the time of the incident until his death;

203.     Reasonable and necessary medical expenses, Reasonable and necessary funeral and burial expenses.

204.     Reasonable and necessary medical expenses Mr. Cortez from the time of the incident until the time of his death; and Reasonable and necessary funeral and burial expenses. Attorney's Fees

205.     Plaintiffs are entitled to recover attorney's fees and costs under 42 U.S.C.
1983 and 1988 including reasonable and necessary attorney's fees incurred by or
on behalf of Plaintiffs

**Equitable Relief**

206.     Equitable relief, including, without limitation, that Galveston County and
Sheriff Trochesset be made to apologize and to promulgate, adopt, train, maintain
and enforce appropriate policies to prevent future instances of the type of
misconduct described herein; Such other relief, including injunctive and/or
declaratory relief, as the court may deem proper.

**Mental Anguish**

207.     Mental Anguish suffered by Mr. Cortez during the days in jail prior to his
death. Mental anguish sustained by Mr. Cortez from the time of the incident until
his death;

208.     Mental Anguish suffered by His surviving mother, Amelia Cortez, his
daughters Mrs. Cortez-Burlingame and Mr. Jenny Espinoza's the surviving family
as a result of the death of Mr. Cortez including, but not limited to, the emotional
pain, torment, and suffering that Plaintiff, would, in reasonable probability,
experience from the death of Mr. Cortez.

**Physical Impairment**

209.     Physical Impairment suffered by Mr. Cortez during the days in Galveston County's custody while in jail prior to his death. Physical Impairment suffered by Mr. Cortez from the time of the incident until his death.

**Loss of Inheritance**

210.     The earnings, if any, of the decedent in excess of the amount they would have used for the support of themselves and their families, and which in reasonable probability would have been added to their estates and left to Plaintiffs at their natural death had he lived.

**Compensatory Special Damages**

211.     Including, but not limited to funeral expenses; Compensatory general damages against each Defendant, jointly and severally, in the amount proven at trial.

**Medical expenses, Funeral and Burial Expenses**

212.     Plaintiffs seek to recover all costs associated with the burial and funeral services for Mr. Jorge Cortez. Reasonable and necessary Reasonable and necessary funeral and burial expenses.

213.     Reasonable and necessary medical expenses Mr. Cortez from the time of the incident until the time of his death; and Reasonable and necessary funeral and burial expenses.

**Attorney's Fees**

214.     Plaintiffs are entitled to recover attorney's fees and costs under 42 U.S.C.
1983 and 1988 including reasonable and necessary attorney's fees incurred by or
on behalf of Plaintiffs Equitable Relief.

**Additional Damages**

215.     Plaintiffs seek to recover all court costs, fees, expenses and expert fees. Pre
and post judgment interest as permitted by law; and, such other relief, including
injunctive and/or declaratory relief, as the court may deem proper.

**Compensatory Special Damages**

216.     Compensatory general damages against each Defendant, jointly and
severally, in the amount proven at trial.

**Equitable relief**

217.     Equitable relief, including, without limitation, that Galveston County and
Sheriff Trochesset be made to apologize and to promulgate, adopt, train, maintain
and enforce appropriate policies to prevent future instances of the type of
misconduct described herein; Such other relief, including injunctive and/or
declaratory relief, as the court may deem proper.

## PRESERVATION OF EVIDENCE/SPOLIATION NOTICE

218.     Plaintiffs sent a letter of preservation on June 12, 2017, and hereby request
and demand that Defendants preserve and maintain all evidence pertaining to any
claim or defense related to the incident made the basis of this lawsuit, or the

damages resulting therefrom. Failure to maintain such items shall constitute a "spoliation" of the evidence.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Estate of Jorge "George" Cortez, Mrs. Jacqueline Cortez Burlingame, Mrs. Jenny Espinosa and Heirs of Jorge "George" Cortez respectfully pray that Defendants, be summoned to appear and answer herein, and that upon a final hearing of this cause, that judgment be entered for the Plaintiffs and against Defendants, both jointly and severally, for all damages requested herein, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which Plaintiffs may possibly be entitled at law or in equity. Punish each individual Defendant, and deter others from engaging in similar conduct;

Plaintiffs assert that the death of Mr. Cortez was the result of government actors, individually, and collectively caused the death and harm suffered was the result of Defendants' conduct motivated by evil motive or intent or done recklessly or with callous deliberate indifference to the federally protected rights of Mr. Cortez, and hereby entitle Plaintiffs to punitive and exemplary damages.

Equitable relief, including, without limitation, that Galveston County and Sheriff Trochesset be made to apologize and to promulgate, adopt, train, maintain and enforce appropriate policies to prevent future instances of the type of misconduct described

herein; Such other relief, including injunctive and/or declaratory relief, as the court may

deem proper.

Respectfully submitted,

THE LEWIS LAW GROUP, PLLC.
By: /S/U.A. Lewis
U. A. Lewis
State Bar No. 24076511
Federal Bar No. 1645666
P. O. Box 27353
Houston, TX 77227
Telephone: (713)570-6555
Facsimile: (713) 581-1017
LEAD ATTORNEY FOR THE PLAINTIFFS

By: /s/ Debra V. Jennings
Debra V. Jennings
SBN: 10631850
Federal Bar ID: 14373
Law Office of Debra V. Jennings
Debra V. Jennings
6140 HWY 6, # 269
Missouri City, Texas 77459
Telephone: (832) 230-4455
Facsimile: (832) 230-4452
Email: lawyerdvj@yahoo.com
ATTORNEYS FOR THE PLAINTIFFS

By: /s/ Randall L. Kallinen
Randall L. Kallinen
SBN: 00790995
Federal Bar No.:19417
AttorneyKallinen@aol.com
511 Broadway
Houston, Texas 77012
Telephone: (713) 320-3785
Facsimile: (713)893-6737
ATTORNEYS FOR THE PLAINTIFFS

By: /s/Damaris Chavez
Damaris Chavez
State Bar No.: 24080507
110 E. Bird Rd. Suite 102
Pasadena Texas 77502
Tel: 713-979-4999
Fax: 832-690-4910
Email: dchavez@lawofficeofdac.com
ATTORNEY FOR THE PLAINTIFFS