United States District Court
Southern District of Texas
**ENTERED**
April 27, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| JACQUELINE CORTEZ-BURLINGAME, ET AL., § § § | |
| Plaintiffs. § § | |
| VS. § | CIVIL ACTION NO. 3:18–CV–00183 |
| § | |
| GALVESTON COUNTY, ET AL., § § | |
| Defendants. § | |

## **MEMORANDUM AND RECOMMENDATION**

Jorge Cortez ("Cortez") died after his incarceration at the Galveston County Jail. As a result of Cortez's death, his estate and several family members (collectively, "Plaintiffs") brought this lawsuit against Galveston County, Sheriff Henry Trochesset ("Sheriff Trochesset"), and several medical providers who worked at the Galveston County Jail (collectively, "Defendants").

There are two pending motions for summary judgment before me: (1) Defendants Boon-Chapman Benefit Administrators, Inc., Soluta Health, Inc., Kathy White A/K/A Kathy Jean Jordan, Garry Killyon, Alexis Ensley, and Kimberly Boykins' Motion for Summary Judgment (Dkt. 46); and (2) Defendants', Galveston County's and Sheriff Henry Trochesset's Motion for Summary Judgment (Dkt. 48) (collectively, the "Motions"). Having considered the Motions, responsive briefing, and applicable law, I **RECOMMEND** that the Motions be **GRANTED.**

## BACKGROUND

On April 7, 2017, Cortez entered the Galveston County Jail to await placement in a drug treatment center following an alleged probation violation. At the time he arrived at the Galveston County Jail, Cortez suffered from a severe, aggressive, and deadly form of cancer known as mesothelioma. Neither Cortez nor Defendants were aware at the time of his incarceration at the Galveston County Jail that this insidious and lethal disease ravaged Cortez's body. As discussed more fully below, the parties agree that Cortez had a less than 50 percent chance of survival from mesothelioma when he entered the Galveston County Jail.

At intake on April 7, 2017, Cortez complained of heartburn. Medical staff saw Cortez that day and gave him medication to treat the heartburn. This was just the beginning of Cortez's interactions with medical personnel at the Galveston County Jail. From April 7, 2017, through May 19, 2017, Cortez made numerous complaints about health-related matters, including heartburn, dizziness, cold symptoms, nasal discharge, throat redness, and congestion. During this time, medical personnel examined and treated Cortez on nine separate occasions: April 7, April 10, April 12, April 19, April 24, April 25, May 1, May 5, and May 19.

On the morning of May 22, 2017, Cortez complained that he was having trouble breathing and was suffering from pain in his back and shoulder. Galveston County Jail staff brought Cortez in a wheelchair to the medical clinic, where medical personnel examined him. His vital signs were normal and he exhibited "breathing non labored, respirations even." Dkt. 49-1 at 7. After discussing his health-related issues with

medical staff, Cortez returned to his cell. Later that day, Cortez returned to the clinic, where he complained to Dr. Gary Killyon ("Dr. Killyon") of pain and weakness in his left side. He was prescribed medication and released.

On May 23, 2017, a deputy called the medical staff to inform them that Cortez was still having trouble breathing. Cortez visited the clinic again for an examination, complaining of right shoulder, lower back, and side pain. His vital signs were normal. He was encouraged to rest and continue taking Ibuprofen.

On May 29, 2017, medical staff examined Cortez yet again for complaints of chest pain and shortness of breath. Cortez did not show signs of acute distress, his vital signs were normal, and his lungs sounded clear. Cortez reported a fall from his bunk a couple of days prior during which he hurt his right shoulder and lower back. Medical personnel issued Cortez a bottom bunk pass and instructed him to continue taking Ibuprofen.

Cortez's condition rapidly deteriorated on May 31, 2017. A deputy brought Cortez into the medical clinic in a wheelchair because Cortez was so weak and in so much pain that he was unable to move on his own. He displayed audible wheezes, and his vital signs showed an elevated blood pressure and a significant change in his oxygen saturations. After determining that Cortez's right lung was moving less air than his left lung, Dr. Killyon ordered Cortez to be transferred to The University of Texas Medical Branch at Galveston ("UTMB") by ambulance. It took doctors at UTMB 17 days to diagnose Cortez with mesothelioma. Cortez died at UTMB on June 23, 2017.

In this lawsuit, Plaintiffs contend Defendants' policies and procedures were deficient, leading to delayed care and Cortez's ultimate death. Plaintiffs allege: (1)

violations of the Eighth Amendment pursuant to 42 U.S.C. § 1983 ("Section 1983"); (2) a supervisor liability claim; (3) a conditions-of-confinement claim; (4) a wrongful death and survivorship claim pursuant to Texas Civil Practice and Remedies Code Chapter 71; and (5) medical negligence pursuant to Chapter 74 of the Texas Healthcare Liability Act.[1]

Defendants have moved for summary judgment on a number of grounds. Defendants first contend that Plaintiffs cannot establish deliberate indifference to support their Section 1983 claim. Next, Defendants argue that Plaintiffs' claims related to Cortez's death are barred due to undisputed medical testimony that Cortez had a lower than 50 percent chance of surviving pre-existing mesothelioma. Sheriff Trochesset claims that he is entitled to qualified immunity as Plaintiffs cannot show (i) that he committed a constitutional violation; and (ii) that his actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. Galveston County and Sheriff Trochesset also maintain that neither supervisor liability nor municipal liability can be established in this case as the facts do not support the existence of an unconstitutional policy which is either a moving force or cause of the alleged deprivation. Finally, Galveston County and Sheriff Trochesset assert that they are entitled to governmental immunity on Plaintiffs' state law claims and punitive damages cannot be awarded against Galveston County.

---

[1] There is a single, stray reference to 42 U.S.C. § 1985 ("Section 1985") in Plaintiffs' Complaint. At the summary judgment hearing, Plaintiffs' counsel confirmed that Plaintiffs are not asserting a Section 1985 claim in this case.

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

As a preliminary matter, I address both parties' objections to the summary judgment evidence.

**A.     PLAINTIFFS' OBJECTIONS**

Plaintiffs lodge blanket objections to five exhibits attached to the summary judgment papers submitted by Galveston County and Sheriff Trochesset, blithely asserting that the entire documents are self-serving, hearsay, irrelevant, prejudicial, and/or incomplete. To put it mildly, I am not a fan of this shotgun approach and am not persuaded as to the merits of any of these objections.

> **Self-Serving**: To start, "[a] party's own testimony is often 'self-serving,' but [a court] do[es] not exclude it as incompetent for that reason alone." *C.R. Pittman Const. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 Fed. App'x 439, 443 (5th Cir. 2011). "[C]haracterizing a party's testimony as 'self serving' is not useful to the court. In a lawsuit, where each party is attempting to advance his own cause and protect his own interests, we are scarcely shocked when a party produces evidence or gives testimony that is 'self-serving.'" *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir. 1989).
>
> **Hearsay**: The broad hearsay objections Plaintiffs assert are too general and vague as they fail to identify what specific parts of the exhibits allegedly contain hearsay statements. Simply screaming "hearsay" at the top of your lungs without pointing out the alleged hearsay statement is insufficient. Courts often reject objections to the summary judgment evidence that are too general, and this case is no exception. *See Hoffman v. Bailey*, 257 F. Supp. 3d 801, 824 (E.D. La. 2017) ("It is not the Court's responsibility to comb through the record to determine the basis for [defendant's] cursory objections or to make arguments on his behalf.").
>
> **Incomplete**: I have no idea what this objection means, and Plaintiffs do not bother to explain, probably because the objection is truly meaningless. If Plaintiffs thought that any part of any specific exhibit failed to tell the whole story, Plaintiffs certainly had the opportunity to present any evidence they wanted me to consider.

>**Irrelevant/Prejudicial:** Plaintiffs object to Sheriff Trochesset's affidavit as "irrelevant" and "prejudicial" without any explanation as to what portion of the affidavit is objectionable on these grounds. This is exactly the type of "loosely formulated and imprecise objection[s]" the Fifth Circuit has held to be insufficient to preserve error. *United States v. Polasek,* 162 F.3d 878, 883 (5th Cir. 1998). More fundamentally, the objections lack merit. I have carefully reviewed Sheriff Trochesset's affidavit and do not find any portions to be irrelevant or prejudicial.

Plaintiffs also object to three exhibits presented by Galveston County and Sheriff Trochesset as unauthenticated. One of those exhibits, the Galveston County Sheriff's Office Manual of Policy and Procedure, is clearly authenticated in Sheriff Trochesset's affidavit. The other two exhibits, the Booking Report (Dkt. 48-3) and the Inmate Log (Dkt. 48-4), are not authenticated, but that does not cause me concern. "At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017). Instead, I may consider evidence that would likely be admitted at trial "without imposing on parties the time and expense it takes to authenticate everything in the record." *Id.* There is no doubt in my mind that Defendants would be able to authenticate the Booking Report and Inmate Log at trial. Plaintiffs' objections are, therefore, overruled.

### B. DEFENDANTS' OBJECTIONS

Defendants object to Plaintiffs': (i) failure to provide citations to evidence in support of their factual allegations; (ii) non-specific citations to voluminous exhibits; and (iii) citations to evidence that does not actually support the factual allegations. These objections are well-grounded. I found particularly helpful the redlined version of Plaintiffs' Response to Defendants' Motion for Summary Judgment (*see* Dkt. 73-1),

which makes it abundantly clear that Plaintiffs routinely misstated the summary judgment record, failed to provide proper citations, and made non-specific citations to voluminous exhibits. Plaintiffs' conduct is inexcusable and should not be tolerated in federal court or, for that matter, any court. Shoddy, inaccurate, and unhelpful citations pervade Plaintiffs' briefing. Let me provide just one example, which captures the essence of what I encountered when reviewing Plaintiffs' filings in this case. To support the assertion that a chest x-ray was taken by doctors at UTMB, Plaintiffs point me to their Exhibit E, a 4,200+ page (yes, that is not a typo) dump of medical records. Do Plaintiffs help me pinpoint which page, among the 4,200+ pieces of paper that comprise this one exhibit, I can turn to in order to find the reference? Unfortunately, no. It is well-settled that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 408 (5th Cir. 2011) (quotation marks and citation omitted). And I will not do so here. *See United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) ("Judges are not like pigs, hunting for truffles buried in the record.") (quotation marks and citation omitted).

All this being said, I am going to deny Defendants' objections to the summary judgment evidence as moot. To be clear, this is not because I find the objections without merit. Even if I consider the entirety of Plaintiffs' summary judgment evidence, the evidence is plainly insufficient to create a genuine issue of material fact for the reasons discussed below. *See Dall. Police Ass'n v. City of Dallas*, No. 3:03-CV-0584D, 2004 WL 2331610, at *1 n.4 (N.D. Tex. Oct. 15, 2004) ("Because the court's decision is not

7

affected even if the court assumes the objections have merit, it need not decide the objections and it overrules them as moot."). Nevertheless, I assure the parties that I will not consider any factual allegations unsupported by references to specific evidence. *See Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004) (asserting that parties should include specific, not general, citations to summary judgment evidence).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's claim. Put another way, "[s]ummary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019). A fact issue is material "only if its resolution could affect the outcome of the action." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quotation marks and citation omitted). "A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (internal quotation marks and citation omitted). "The moving party . . . bears the initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (internal quotation marks and citation omitted). If the burden of production at trial "ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek,*

8

*USA, Inc.*, 871 F.3d 305, 310–11 (5th Cir. 2017) (quotation marks and citation omitted). Once a party "meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon*, 808 F.3d at 270 (quotation marks and citation omitted). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. [It] must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (internal quotation marks and citations omitted). "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (quotation marks and citation omitted).

## ANALYSIS

**A.  DELIBERATE INDIFFERENCE**

In asserting a Section 1983 claim, Plaintiffs allege Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by providing Cortez with inadequate medical treatment. It has long been the law in medical treatment cases that Eighth Amendment rights are not violated unless a government official acts with deliberate indifference to the prisoner's medical needs. *See Domino v. Tex. Dep't of Crim. Justice,* 239 F.3d 752, 754 (5th Cir. 2001). Deliberate indifference is "an extremely high standard." *Id.* at 756. In order to establish deliberate indifference:

> The prisoner must first prove objective exposure to a substantial risk of serious harm—in other words, the prisoner must prove a serious medical need. Second, the prisoner must prove the officials' subjective knowledge

9

> of this substantial risk. Third, the prisoner must prove that the officials, despite their actual knowledge of the substantial risk, denied or delayed the prisoner's medical treatment. Finally, the prisoner must prove that the delay in or denial of medical treatment resulted in substantial harm, such as suffering additional pain. Importantly, disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference.

*Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019) (quotation marks, footnotes, and citations omitted). A showing of deliberate indifference requires the prisoner to submit evidence that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino,* 239 F.3d at 756 (quoting *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985)). "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *James v. Harris Cty.*, 577 F. 3d 612, 617–18 (5th Cir. 2009) (internal quotation marks and citation omitted). See also *McCormick v. Stadler*, 105 F.3d 1059, 1061 (5th Cir. 1997) ("Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."). "[D]eliberate indifference exists wholly independent of an optimal standard of care." *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006). See also *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001) (explaining that a mere disagreement with medical treatment is not deliberate indifference). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference." *Gobert*, 463 F.3d at 346. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both

deliberate indifference and a resulting substantial harm. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

To survive summary judgment, Plaintiffs must raise a triable issue of fact that Defendants acted with deliberate indifference. Based on my careful review of the summary judgment record before me, which I have summarized in the Background section of this Memorandum and Recommendation, Plaintiffs cannot meet that high bar. Even when I bend over backwards and view the record in the light most favorable to Plaintiffs, it is not a close call. There is absolutely no evidence presented by Plaintiffs that remotely suggests Defendants recklessly disregarded a substantial risk of serious harm to Cortez.

This is not a case in which a prisoner complains on numerous occasions about health issues and is given the so-called Heisman by government officials, who leave the prisoner to suffer alone without any medical care whatsoever. *See Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976) (Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.") (footnotes omitted). The exact opposite occurred here. The summary judgment evidence conclusively establishes that each and every time Cortez complained of health-related issues, medical personnel actively treated him, seeking to uncover the underlying cause of his infirmities. In doing so, medical staff listened to Cortez's complaints, examined him at the clinic, and often prescribed him medication intended to ameliorate various health ailments. All told, medical staff saw and treated Cortez more

than a dozen times during his approximately two-month stay at the Galveston County Jail from April 7, 2017, through May 31, 2017. Not once did medical personnel deny Cortez medical attention or fail to respond to his pleas for help.

Additionally, there is no allegation—much less evidence—that medical personnel purposefully treated Cortez incorrectly or intended to inflict pain or harm of any kind on him. The medical documentation contained in the summary judgment record highlights the great efforts medical personnel took to care for Cortez while he was an inmate at the Galveston County Jail. As a matter of law, deliberate indifference is not established when "medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). *See also Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992) ("The treatment may not have been the best that money could buy, and occasionally, a dose of medication may have been forgotten, but these deficiencies were minimal, they do not show an unreasonable standard of care, and they fall far short of establishing deliberate indifference by the prison authorities."). It is particularly telling that Plaintiffs' expert, Dr. K. Scott Lloyd ("Dr. Lloyd"), took great pains at his deposition to avoid offering an opinion that Defendants acted with deliberate indifference towards Cortez's medical needs.

At its core, Plaintiffs' real complaint is that Defendants did not provide Cortez with the proper medical treatment and failed to timely diagnosis his true medical condition. This might be sufficient to establish a state law medical malpractice claim, but it is far from what is required to create a fact issue on deliberate indifference. Deliberate indifference cannot be simply inferred from a government official's mere failure to act

reasonably. *See Petzold*, 946 F.3d at 250 ("[B]ecause medical treatment was provided, even if it was negligent, disagreed-with, and based on a perfunctory and inadequate evaluation, it was not denied. Under governing precedent, imperfect treatment does not equal denied treatment.") (footnote omitted); *Stewart v. Murphy*, 174 F. 3d 530, 534–35 (5th Cir. 1999) (explaining that active treatment of a medical condition is not deliberate indifference). No matter how much time I spend perusing the summary judgment record, I am simply unable to locate any evidence that evinces a wanton disregard by Defendants for Cortez's medical needs. Because Plaintiffs have failed to establish that Defendants acted with deliberate indifference to Cortez's medical needs, summary judgment is appropriate on Plaintiffs' Eighth Amendment claim.[2]

**B.    LOST CHANCE OF SURVIVAL**

Even if Plaintiffs were able to show a constitutional violation, Plaintiffs' Section 1983 claim for Cortez's wrongful death would still fail because there is no evidence that Cortez had a greater than 50 percent chance of survival when he arrived at the Galveston County Jail.

---

[2] This disposes of Plaintiffs' Section 1983 claim, the supervisor liability claim, and the conditions-of-confinement claim. The supervisor liability claim against Sherriff Trochesset and various doctors and nurses at the jail is dependent on a successful allegation of a constitutional violation. *See Pena v. Givens*, 637 F. App'x 775, 785 (5th Cir. 2015) ("Supervisory liability requires a constitutional violation by a subordinate."). Because I have determined that Cortez's constitutional rights were not violated, any claim for supervisor liability against Sherriff Trochesset must be dismissed. *See Luhellier v. Oyster Creek*, No. 3:18-CV-00281, 2019 WL 3419016, at *7 (S.D. Tex. July 10, 2019). As far as Plaintiffs' conditions-of-confinement claim is concerned, it is just a restatement of Plaintiffs' Section 1983 claim based on the alleged violation of Cortez's Eighth Amendment rights. As such, my determination that Plaintiffs have failed to establish a triable issue of fact on deliberate indifference means that the conditions-of-confinement claim also fails as a matter of law.

A "plaintiff seeking to recover on a wrongful death claim under § 1983 must prove both the alleged constitutional deprivation required by § 1983 and the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute." *Phillips ex rel. Phillips v. Monroe Cty.*, 311 F.3d 369, 374 (5th Cir. 2002). To prove causation under the Texas wrongful death statute, a plaintiff "must demonstrate that the defendant's wrongful actions more likely than not caused the decedent's death—not just that they reduced the decedent's chance of survival by some lesser degree." *Slade v. City of Marshall*, 814 F.3d 263, 265 (5th Cir. 2016). *See* also *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 404 (Tex. 1993) (Texas's Wrongful Death Act "authorizes recovery solely for injuries that *cause* death, not injuries that cause the loss of a less-than-even chance of avoiding death.").

This means that when a decedent has a pre-existing terminal disease, like that which Cortez had, Texas law requires competent evidence that the person had greater than a 50 percent chance of survival absent the defendant's conduct for a plaintiff to recover. *See Kramer*, 858 S.W.2d at 400. "[W]here pre-existing illnesses or injuries have made a patient's chance of avoiding the ultimate harm improbable even before the allegedly negligent conduct occurs—*i.e.*, the patient would die or suffer impairment anyway—the application of these traditional causation principles will totally bar recovery, even if such negligence has deprived the patient of a *chance* of avoiding the harm." *Id. See also Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 860 (Tex. 2009) (Recovery is barred "if a condition preexists the negligence of a health

care provider and at the time of the negligence, the condition resulted in the patient having a 50% or less chance of cure or survival.").

In this case, Plaintiffs' own expert (Dr. Lloyd), Defendants' expert, Dr. J. Eric Stupka ("Dr. Stupka"), and the medical examiner all concluded that Mr. Cortez died as a result of mesothelioma. More importantly, because mesothelioma is such an aggressive and deadly disease, the undisputed evidence indicates that Mr. Cortez had less than a 50 percent chance of surviving at the time he entered the Galveston County Jail in April 2017. As Dr. Lloyd readily acknowledged:

> **Q.** And so you've testified that he—that the chance of survival is less than 50 percent in May. It's probably less than 50 percent in April, as well, agreed?
>
> **A.** Correct.

Dkt. 48-5 at 55–56. *See also id*. at 44 (Dr. Lloyd acknowledging that "[t]here's a less than 50 percent chance that [Cortez is] going to survive the cancer."); Dkt. 46-2 at 82 (Q: "Is there anything that could have been done, in your opinion, that would have saved Mr. Cortez from dying from cancer? A: No."). Defendants' expert, Dr. Stupka, fully agreed with this assessment. *See* Dkt. 48-10 at 3 ("I share Dr. Lloyd's opinion that as of April 7, 2017, Mr. Cortez'[s] chance of surviving his cancer was significantly lower than 50%, regardless of later events."). Stated simply, the medical evidence conclusively disproves causation and, as a result, Plaintiffs' wrongful death claims are foreclosed. *See Kramer*, 858 S.W.2d at 400.

In a Hail Mary attempt to avoid dismissal, Plaintiffs argue that the 50 percent chance rule does not apply to Section 1983 claims. That argument is, to put it mildly,

15

completely ludicrous. Plaintiffs cannot point to a single case suggesting that the 50 percent chance rule does not apply to Section 1983 claims. The reason: the Fifth Circuit has reaffirmed application of the 50 percent chance rule in Section 1983 cases on multiple occasions. *See, e.g., Montano v. Orange Cty.*, 842 F.3d 865, 882–83 (5th Cir. 2016) (holding that Texas law governs the causation analysis in the Section 1983 context and then discussing the 50 percent chance rule); *Slade*, 814 F.3d at 266–67 (affirming the application of the 50 percent chance rule in the Section 1983 wrongful death context).

Plaintiffs also argue that under the holding in *Smith v. Christus Saint Michaels Health System*, 496 F. App'x 468 (5th Cir. 2012), the 50 percent chance rule does not apply because the cause of Cortez's death was the mesothelioma complications induced by Defendants' wrongful conduct, not the mesothelioma itself. This argument is without merit. Let me explain why.

In *Smith*, Austin Smith's doctors implanted a catheter in his jugular vein as part of his cancer treatment. *See id*. at 469. Because Smith had a high risk of falls, the hospital protocols required his bed alarm to be activated. The bed alarm made a noise if Smith got out of bed, alerting the nurse to check on him. On the night of Smith's death, the hospital staff failed to activate his bed alarm. When Smith got out of bed, he fell to the ground and the catheter detached itself from his jugular vein, causing him to bleed to death. The Fifth Circuit held that "Plaintiffs were not required to show that Austin Smith had a greater than fifty percent chance of surviving his cancer . . . in order to prove causation where Defendant's alleged negligence caused Smith to bleed to death and was unrelated to Smith's pre-existing conditions." *Id*. at 474.

The *Smith* case is easily distinguishable. The reason the 50 percent chance rule did not apply in *Smith* was because the cause of Smith's death was entirely unrelated to his underlying condition. *See id*. In other words, the cause of Smith's death was not the cancer—it was the intervening cause of the hospital staff's failure to activate the bed alarm, which led to him bleeding to death on the hospital floor. *See id*. Plaintiffs allege that the intervening cause here was Defendants' failure to promptly diagnose Cortez's mesothelioma, which led to the untreated build-up of fluid in his lungs and ultimately death due to respiratory failure. However, the Fifth Circuit made clear in *Smith* that when a pre-existing condition is misdiagnosed and the misdiagnosed condition leads ultimately to death, the 50 percent chance rule applies because there is an unbroken causal relationship between the pre-existing condition and the resulting death. *See id*. at 471. That is exactly what happened in this case. Defendants' alleged misdiagnosis of Cortez and any purported failure to treat his mesothelioma was not an intervening cause that broke the chain of causation between the mesothelioma and his untimely demise. Even Dr. Lloyd agrees that "Mr. Cortez ultimately died as a result of . . . mesothelioma." Dkt. 46-2 at 75. Therefore, the narrow holding in *Smith* does not apply to this case.

Where, as here, there is undisputed medical evidence that a decedent had a 50 percent or less chance of surviving without the alleged wrongful conduct of the defendants, causation is lacking and recovery is prohibited. Plaintiffs cannot maintain any claims for damages related to Cortez's death. Summary judgment is, therefore, proper on such claims.

C.  **PLAINTIFFS' STATE LAW CLAIMS**

Now that I have recommended dismissal of Plaintiffs' Section 1983 cause of action, the supervisor liability claim, medical negligence damages related to Cortez's death, and the conditions-of-confinement cause of action, all that is left is a state law claim for medical negligence pursuant to the Texas survival statute.[3] Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental or pendent jurisdiction over a state law claim when it has dismissed all claims over which it has original jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "When all federal claims are dismissed prior to trial, the general rule in this Circuit is for the district court to decline exercising jurisdiction over the remaining state law claims." *Cooper v. Dart Area Rapid Transit*, No. 3:14-CV-3832-B-BH, 2015 WL 9703716, at *3 (N.D. Tex. Dec. 18, 2015). *See also Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011) (explaining that the rule in the Fifth Circuit "is to dismiss state claims when the federal claims to which they are pendent are dismissed") (quotation marks and citation omitted). I will follow this general practice. Because I am recommending the dismissal of Plaintiffs' federal claims, I also suggest that the district court decline to exercise supplemental or pendent jurisdiction over any state law claims raised by Plaintiffs. This case should be dismissed.

---

[3] Because I find Defendants' arguments on deliberate indifference and the 50 percent rule dispositive, I need not address the other arguments raised by Defendants as independent reasons for dismissal of Plaintiffs' lawsuit.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that the Motions be **GRANTED** and this case be **DISMISSED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED in Houston, Texas, this 27th day of April, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE